[No. 23207. Department Two. July 16, 1931.]

ANNIE MOSS, *Appellant*, v. GEORGE H. MOSS, *Respondent*.[1]

*L. A. Michelson* and *Allen & Walthew (Karl P. Heideman*, of counsel), for appellant.

*Padden & Moriarty,* for respondent.

MILLARD, J.—This is an action for contribution from a divorced husband for expenditures made by the wife in caring for the disabled son of the parties, and to

[1]Reported in 1 P. (2d) 916.

require the father to make future monthly payments for the maintenance of the invalid son. The trial of the cause to the court resulted in findings of fact from which the court concluded that the plaintiff was entitled to recover, as contribution from the defendant for the support of the son, fifteen dollars monthly for three years immediately preceding the commencement of the action, and twenty dollars monthly thereafter until the further order of the court. Decree was entered accordingly. The plaintiff and the defendant have appealed. The former complains that the allowance is too small, and the latter contends that the plaintiff is not entitled to recovery in any amount.

The judgment appealed from was entered October 25, 1930. On February 16, 1931, one hundred and fourteen days subsequent to the entry of the judgment, the statement of facts was served and filed. Not having been filed within the ninety-day period (Rule of Practice VII, 159 Wash. lxi), the statement of facts must be stricken. *Perkins v. Perkins,* 158 Wash. 351, 290 Pac. 855; *Chelan Electric Co. v. Wick,* 148 Wash. 479, 269 Pac. 827.

The evidence not being before us, we must look to the court's findings, reading as follows, which must be taken as stating the facts:

"That the parties to this action were married in 1885 and among other children, a son, Walter, was born to them. That Walter became 21 years of age in 1911 and was married in 1915. That on May 30th, 1917, Walter was injured in a mine accident in the State of Washington, where he was employed; that since said accident he has been crippled and the lower portion of both legs have been amputated. That his body is in a helpless condition, but that his mind is clear and unaffected. That Walter divorced his wife after his injury in 1921, and has remained with his

mother most of the time since the injury and that his mother has contributed to his support.

"II. That a final decree of divorce between the parties to this action was entered on April 16th, 1924; that the defendant, George H. Moss, has since remarried; that the plaintiff, Annie Moss, is 63 years of age and George H. Moss is 70 years of age.

"III. That the said Walter Moss had up to the time of the filing of the complaint, received $8388.98 from the Industrial Insurance Department of the State of Washington; that at the time of the trial Walter was receiving $21.12 a month from such Industrial insurance, which allowance will continue in at least such amount.

"IV. That the complaint in the divorce action between the parties hereto alleges that the defendant refused to contribute anything to the support of his crippled son, and that a property settlement was entered into and confirmed by the court.

"V. That the defendant purchased a wheel chair for his son and had given him approxmiately $150.00, besides $100.00 given him during the trial of this action; he also bought a lot from his son paying him the sum of $450.00; that said lot had previously belonged to the plaintiff; that Walter Moss had received some income since his injury from intoxicating liquor. That certain property in Yakima known as the Yakima property was purchased by Walter with a $3500.00 lump payment from his Industrial Insurance, which was conveyed on February 19th, 1927, by Walter to the plaintiff in consideration of her aid to him.

"VI. That the defendant has not been able to work at regular employment since the year 1918 and 1919.

"VII. That the plaintiff owns property, the value of which exceeds two or three times that of the property owned by the defendant.

"VIII. That the sum of $15.00 per month is a reasonable and proper sum for the defendant to contribute to the support of Walter Moss for a period of three years prior to the commencement of this action, and $20.00 is a reasonable and proper sum for defendant to contribute to the support of Walter Moss since the

commencement of said action, and until the further order of the court.''

Our statute requiring certain relatives (if such relatives ''be of sufficient ability'') of every poor person who is unable to earn a livelihood because of physical or mental disability, to support such poor person, provides that the person failing or refusing to support his poor relative, when directed by the board of commissioners of the county where such poor person shall be found, shall forfeit and pay to the county for the use of the poor of their county thirty dollars monthly, to be recovered in an action brought by such county commissioners before any justice of the peace or any court having jurisdiction. The statute reads as follows:

''Every poor person who shall be unable to earn a livelihood in consequence of bodily infirmity, idiocy, lunacy, or other cause shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers, or sisters of such poor person, if they or either of them be of sufficient ability; and every person who shall fail or refuse to support his or her father, grandfather, mother, grandmother, child, grandchild, sister, or brother, when directed by the board of commissioners of the county where such poor person shall be found, whether such relatives reside in the county or not, shall forfeit and pay to the county, for the use of the poor of their county, the sum of thirty dollars per month, to be recovered in the name of the county commissioners for the use of the poor as aforesaid, before any justice of the peace or any court having jurisdiction: *Provided,* That when any person becomes a pauper from intemperance or other bad conduct, he shall not be entitled to any support from any relation except parent and child.'' Rem. Comp. Stat., § 9982.

''The children shall be first called on to support their parents, if there be children of sufficient ability, and if there be none, the parents of the poor person

shall be next called on, and if there be no parents or children of sufficient ability, the brothers and sisters shall be next called on; and if there be no brothers and sisters, the grandchildren of such poor person shall be called on, and then the grandparents; but married females whilst their husbands live shall not be liable to a suit." Rem. Comp. Stat., § 9983.

The duty of a parent to provide support for an adult son who is unable to earn his livelihood because of bodily infirmity or by reason of mental disability is statutory. No legal liability existed at the common law.

"At common law there is no legal liability resting on one relative to support another, however strong the moral duty may be. The duty of providing such support is purely statutory, and the procedure provided for its enforcement is exclusive." *Multnomah County v. Faling,* 49 Ore. 603, 91 Pac. 21.

The term "poor" person as used in our statute means such person who is so completely destitute as to require assistance from the public. It refers to a person who is so helpless by reason of physical or mental infirmity as to be dependent for his support upon public charity; that such person is unable to provide for and maintain himself.

"Generally, the terms 'pauper,' 'poor person,' 'indigent person,' 'person in distress,' etc., in statutes providing for the relief of such persons, are used to describe that class of persons who are so destitute and helpless as to be dependent for their support upon public charity." 48 C. J. 428.

Though one be mentally or physically incapable of earning his livelihood, he would not be a "poor person" if he were possessed of property which could be made available for his support. It must also be borne in mind that the one sought to be charged with the

statutory liability of supporting his poor relative must be of "sufficient ability" to support the poor relative.

Do the findings sustain the judgment? Where there is no statement of facts properly bringing the evidence before us, it will be presumed that the facts necessary to sustain the judgment were established by the evidence. That presumption, however, will not be indulged if the findings are complete and negative the existence of an essential fact.

Unless the son is a "poor person" as defined above, the father is under no legal liability to support his son. Nor can that liability be imposed unless the father is of "sufficient ability" to support his son. If the court failed to affirmatively find that the son was a poor person, or that the father was of "sufficient ability" to support his son, the judgment must be reversed and the action dismissed.

"It is true, as urged by respondent, that in the absence of a statement of facts and in the absence of an affirmative finding to the contrary, it will be presumed, on incomplete or defective findings, that every fact necessary to sustain the judgment was established by the evidence. *Harbican v. Chamberlin,* 82 Wash. 556, 144 Pac. 717; *Magee v. Risley,* 82 Wash. 178, 143 Pac. 1088; *Gould v. Austin,* 52 Wash. 457, 100 Pac. 1029; *Clambey v. Copland,* 52 Wash. 580, 100 Pac. 1031. But where, as here, the findings are complete on their face, and the absence of a fact necessary to make a cause of action affirmatively appears in the findings themselves, no such presumption can be indulged." *Rea v. Eslick,* 87 Wash. 125, 151 Pac. 256.

While the court found that the mother owned property which exceeded in value two or three times that of the property owned by the father, there is no finding that either the father or mother is of "sufficient ability" to support the son. There is nothing in the findings disclosing the financial ability of the father

or mother, justifying the conclusion that the father or mother was of sufficient ability to support the son. Neither is there a finding that the son is a "poor person." The correct conclusion to be drawn from the findings is that the son is not a "poor person."

The court found that, because of the amputation of his legs following the accident in 1917, the son was in a helpless condition, and had not been able to work at regular employment since the year 1918 and 1919; that the son's mind was clear and unaffected; that from May, 1917, to January, 1930, the son received from the industrial insurance fund approximately eighty-four hundred dollars and from his father seven hundred dollars, or a total of ninety-one hundred dollars, or approximately sixty-one dollars a month. Though the court found that the son was helpless, the court also found that the son's mind "is clear and unaffected," and that he recevied some income from intoxicating liquor. The amount of the income is not stated nor does it appear how he could legitimately receive an income from such a source.

In 1924, the mother and father were divorced. The mother alleged in her complaint in that action that the father refused to contribute anything to the support of the son. The court found that a property settlement was entered into and confirmed by the court at that time. What the settlement was, the findings do not disclose. The court further found that, three years prior to the trial, the son conveyed to his mother, in consideration of her aid to him, real property of the value of thirty-five hundred dollars. Whether the mother still owns that property and is to devote the income received therefrom to aid her in the future in caring for her son, the findings do not state. At the time of the trial of this cause, the son was receiving

compensation of twenty-one dollars monthly from the workmen's compensation fund, an allowance that the court found would continue.

There is no affirmative finding, nor can we say that the only reasonable inference to be drawn from the findings of fact is that the son is a "poor person" and is unable to earn a livelihood because of bodily infirmity.

The question whether, to fix liability against a delinquent relative, it is necessary that an order be made by the board of county commissioners directing such relative to discharge the duty imposed upon him, is not before us. There is no finding that the son is a "poor person," nor did the court find that the father was of sufficient ability to support his son.

The judgment is reversed on cross-appeal of the defendant, and the cause remanded with directions to dismiss the action.

BEELER and FULLERTON, JJ., concur.

TOLMAN, C. J., and BEALS, J., concur in the result.